# Wilkes *v.* Buffalo, Rochester & Pittsburg Railway Company, Appellant.

*Negligence—Railroads—Passenger—Locomotive engineer—Master and servant.*

In an action against a railroad company to recover damages for the death of plaintiff's husband, it appeared that the deceased prior to his death had successfully passed an examination for the position of locomotive engineer on the defendant's railroad. Wishing to inform himself more particularly about a section of the road where the signals had been changed, he secured an employee's pass, and written permission from the company to ride on any of the locomotives of the division. He took the trip voluntarily, and without any compensation. In the course of the journey he first rode in one of the cars, and later on took his place in the locomotive cab. While riding there, the train left the tracks owing to the negligence of the engineer in charge, and the deceased was killed. *Held*, (1) that the question whether the deceased was or was not a passenger was for the jury, and (2) that a verdict and judgment for plaintiff should be sustained.

Argued Oct. 17, 1906.   Appeal, No. 146, Oct. T., 1906, by defendant, from judgment of C. P. Butler Co., June T., 1905, No. 74, on verdict for plaintiff in case of Annie Wilkes v. Buffalo, Rochester & Pittsburg Railway Company.   Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ.   Affirmed.

Trespass to recover damages for death of plaintiff's husband.

· Verdict and judgment for $10,286.67.   Defendant appealed.

On a motion for a new trial and for judgment non obstante veredicto GALBREATH, P. J., filed the following opinion:

This suit is brought and sought to be maintained by plaintiff on the theory that the deceased, at the time of his death, was a passenger on the defendant company's train. It was tried on the theory that whether or not he was a passenger was a question of fact for the jury, rather than one of law for the court.

In submitting this question the jury was instructed that if the deceased, at the time he met his death, was in the actual service of the company or engaged in that which was reasonably or necessarily an incident of such service, there could be no recovery, as he would, in that event, be an employee of the company, and no recovery could be had for his death resulting from the negligence of a fellow servant. The jury was further instructed that if the deceased were not, at the time he met his death, an employee of the defendant company, then, necessarily, he was a passenger, as it was not contended that he was on the train as a trespasser, but that, even if he were there as a trespasser, yet there could be no recovery, without proof on part of the plaintiff that the deceased met death through the negligence of the defendant company, the burden of proving which, under the facts of the case, rested on plaintiff.

The plaintiff's proof showed, inter alia, that the deceased had been for a number of years in the employ of the defendant company as a locomotive engineer, on various portions of its line, and that a short time prior to his death he had been employed in that capacity on the Clearfield branch of the defendant's road, but that during the month of February, 1905, he had made a number of trips over the Pittsburg division, for the purpose of learning the road, with a view to employment on that division by assignment thereto in the very near future, and that while making these trips he was in the pay of the defendant company; that on their completion he took the required examination before the proper official in a satisfactory manner, and was thus qualified for his expected employment on said division of defendant's road; that having learned that some change had been made in the signals near the Bakerstown tunnel, some seventeen miles south of

Butler, on said division, after he had made his trips over it "learning the road," the deceased concluded that it would be well to acquaint himself with the change at that point before assuming his duties as engineer on said division. Having previously passed his examination and qualified for his expected new duties, it was not required of him by the defendant company that he should further prepare himself. His undertaking to do so was his own voluntary act, and it does not appear that either he or the defendant company contemplated that he should receive compensation for the performance of this self-imposed duty.

At the time of his decease, March 11, 1905, Wilkes was in possession of an employee's quarterly pass, good until March 31, 1905. In addition to this he had obtained from the master mechanic of defendant company at DuBois, which was the head of the Pittsburg division and the place of his residence, a special permit authorizing all Pittsburg division freight and passenger engineers to allow him to ride on their engines for the purpose of learning the Pittsburg division. This was dated March 10, 1905, was good until March 20, 1905, and was obtained, as the testimony shows, by Wilkes for the express purpose of making the trip to Bakerstown tunnel for the purpose of learning the change in signals at that point. Leaving DuBois, he rode in the passenger coach until he reached Butler Junction, a short distance north of Butler, at which place he entered the engineer's cab. The engine was in the charge of engineer Logan, who continued in charge of it up to the time of the accident, except that as the train slackened its speed in approaching the Butler station, Logan left the locomotive in charge of Wilkes, while he, Logan, went into the office to register, the train being slightly behind time at that point. Having registered, Logan again assumed charge of the engine, and, presumably in order to make up lost time, the train soon attained a quite high rate of speed, so that on reaching a certain curve about three miles south of Butler, the engine left the track, causing the death of Wilkes. The evidence tended to show, and the jury must have found, that the train was being run at an excessive rate of speed at the time of the accident and that this was the cause of death. The plaintiff claims that her deceased husband, riding in the cab of the en-

gine, at that time, and under the circumstances, was a passenger and not an employee; that his objective point was the Bakerstown tunnel and the trip a voluntary one on his part for which no compensation was contemplated or paid, and that the defendant company owed him the duty of safe conduct.

On the other hand, the defendant contends that the deceased at the time he met his death, was an employee, and that this is evidenced by the fact of his employee's pass, his special permit for the purpose of learning the road, and his presence in the engineer's cab at the time of the accident. Neither of these positions, however, seemed to be necessarily conclusive of the case. It does not necessarily follow, we think, from the fact that the deceased was in possession of an employee's pass at the time he met his death, that he was therefore in the defendant company's actual service at that time, and not a passenger on its train.

An employee's pass might well be used by its possessor in pursuit of pleasure or other purpose wholly foreign to the service of the company.

In fact it would not be usual for an employee in actual train service to be required to have a pass. The nature of his duties would be his passport. It comes to a question, therefore, whether, at the time of the accident, the deceased was in the actual service of the company, performing the duties of an employee. If so, what were his duties and what was his employment? By whom had his service been assigned and to whom was he responsible for the manner of its performance? It cannot, we think, be contended that he was at the time in the actual service of the company.. Service, too, implies compensation, but compensation for the trip in question does not seem to have been in the mind of either party. But if not in actual service of the company at the time, was he engaged in that which was a necessary incident to his employment, either present or prospective? It is not disputed that Wilkes had fully qualified himself for the new employment to which he was looking forward. He was making the trip in question entirely of his own volition. We do not think the case is in this respect different from what it would have been had the deceased in any other respect sought to better equip himself for his new duties in point of the

garb he should wear, or otherwise, and a trip was being made to the city of Pittsburg for that purpose. In neither case would the added equipment be required of him at the hands of his prospective employer, but he himself deemed it prudent to have it and set about to obtain it. This involved a trip over defendant's railroad. His employee's pass afforded him the opportunity of making the trip without cost to himself, which would be true in either of the above supposed cases. Defendant's counsel, on the argument of the question involved, admitted that if the accident had occurred while Wilkes was in the passenger coach on his way from DuBois to Butler Junction, the defendant would have been liable to him as a passenger, although traveling on an employee's pass, and in this we think they were correct. But if he was a passenger during the first stage of his journey, notwithstanding his employee's pass, would he not remain a passenger during the remainder of his trip, so far as the question of his pass was concerned? Some new element would necessarily enter in to change his relation to the defendant company to that of employee. And it is at this point that the counsel for the defense contend that a new element did enter. They say that when Wilkes, at Butler Junction, left the passenger coach and entered the engineer's cab, that by doing so he took himself out of the usual place where passengers travel and made himself an employee, and thereby deprived himself of the protection and care due a passenger.

While the question thus presented is not free from doubt, yet it is not at all clear that the alleged result would follow his change of place. It is beyond doubt that the general rule requires passengers to ride in the places prepared for them. But this general rule is subject to modification by the supreme authority of the company. In the present case the defendant, in the person of its master mechanic, gave Wilkes authority to ride on the engines of the Pittsburg division. It does not follow from this, we think, that it by its own act granting the deceased permission, thereby divested itself of the responsibility and consequent liability which existed and continued up to that point. He was no more in the service of the company while riding in the cab of the engine, we think, than when riding in the passenger coach. His purpose was the same all

the while. The same degree of care would seem to be due him in the one case as in the other. He rode where he did at the various stages of the journey by authority of the defendant company. His employee's pass permitted him to travel in the passenger coach, while the express authority of the company gave him a place in the cab of the engineer. When the company gave him permission to ride in that place, we think it assumed the duty of carrying him safely there, and was answerable for neglect in this respect.

None of our own cases seems to. rule the case in hand in all its circumstances. Neither, in fact, does any other which has been cited to us. In their essential features the cases of State v. West Md. R. R. Co., 63 Md. 433, and Phila. & Reading R. R. Co. v. Derby, 55 U. S. 468, cited by plaintiff's counsel, seem to more nearly resemble the case in hand.

We are not convinced that there was error in submitting the question involved in this case to a jury, under the instructions given, including the instruction that, in order to recover, the plaintiff must prove negligence, which could not be presumed, even though Wilkes were a passenger, by reason of the stipulation indorsed on his employee's pass : Rowdin v. Penna. R. R. Co., 208 Pa. 623.

For the reasons herein given the motion for a new trial is refused. Also motion that judgment be.entered for the defendant, non obstante veredicto, is refused this July 9, 1906.

*Lev. McQuistion*, with him *F. J. Forquer*, for appellant.— Wilkes was not a passenger: Penna. R. R. Co. v. Price, 96 Pa. 256 ; Ryan v. Cumberland Valley R. R. Co., 23 Pa. 384 ; Webster v. Fitchburg R. R. Co., 161 Mass. 298 (37 N. E. Repr. 165) ; Illinois Central R. R. Co. v. O'Keefe, 168 Ill. 115 (48 N. E. Repr. 294) ; Farley v. R. R. Co., 108 Fed. Repr. 14 ; Vandegrift v. West Jersey & R. R. Co., 71 N. J. L. 637 (60 Atl. Repr. 184) ; Eaton v. D., L. & W. R. R. Co., 57 N. Y. 382 ; Vick v. N. Y. Cent. & H. R. R. R. Co., 95 N. Y. 267 ; Russell v. Hudson River R. R. Co., 17 N. Y. 134 ; Hoar v. Maine Cent. R. R. Co., 70 Me. 65 ; Davis v. Chicago & R. R. Co., 45 Fed. Repr. 543.

Assuming that deceased voluntarily and of his own motion, mounted the engine, plaintiff's intestate could not maintain

the action and binding instructions should have been given: Dietrich v. Penna. R. R. Co., 71 Pa. 432; Pitcher v. Ry. Co., 154 Pa. 560; Lehigh Valley R. R. Co. v. Greiner, 113 Pa. 600; Patterson's Ry. Acc. Law, 212; Custer v. B. & O. R. R. Co., 206 Pa. 529.

*John M. Greer,* with him *John B. Greer* and *Thomas H. Greer,* for appellee.—Everyone riding in a railroad car is presumed, prima facie, to be there lawfully as a passenger having paid or being liable when called upon to pay his fare, and the onus is upon the carrier to prove affirmatively that he was a trespasser: Penna. R. R. Co. v. Books, 57 Pa. 339; Creed v. Penna. R. R. Co., 86 Pa. 139.

It was for the jury to determine whether or not deceased was a passenger: Illinois Steel Co. v. Bauman, 178 Ill. 351 (53 N. E. Repr. 107); Theleman v. Moeller, 73 Iowa, 108 (34 N. W. Repr. 765); Mullan v. Steamship Co., 78 Pa. 25.

A railroad employee may be a passenger on the railroad of his employer, and even if Mr. Wilkes could be considered in the service of the defendant company as its employee after March 2d, when not on duty he could at the same time be a passenger on one of its trains: McNulty v. Penna. R. R. Co., 182 Pa. 479; Rowdin v. Penna. R. R. Co., 208 Pa. 623; Penna. R. R. Co. v. Books, 57 Pa. 339; Thompson v. R. R. Co., 47 La. Ann. 1107 (17 So. Repr. 503); Whitney v. R. R. Co., 50 L. R. A. 615; Ohio & Miss. R. R. Co. v. Muhling, 30 Ill. 9; Ricks v. Flynn, 196 Pa. 263.

PER CURIAM, January 7, 1907:

Judgment affirmed on the opinion of the court below.