# Dugan v. Susquehanna Coal Company, Appellant.

*Negligence—Master and servant—Mining railroad—Riding on loaded cars—Collision—Burden of proof—Contributory negligence —Binding instructions.*

1. As between employer and employee, the mere happening of an accident from which negligence could be inferred raises no presumption of negligence against the employer. The burden of proof is on the plaintiff and a specific act of negligence must be shown.

2. In an action by a coal miner to recover damages for personal injuries sustained on a mining railroad operated by his employer, binding instructions for the defendant are proper where it appears that the plaintiff was riding upon a loaded coal car, facing the back of the engine, with his legs hanging down between the engine and the end of the first car, and was injured in a collision with another similar train, for whose presence on the track at the time the defendant was not shown to be responsible, it appearing that the furnishing of transportation to the plaintiff was not in pursuance

of any contract to transport him as a part of the compensation for his services; and that plaintiff's action in riding upon the loaded car was contrary to statutory prohibition and to the rules of the company, of which he had notice by printed signs, although miners frequently rode upon such loaded cars.

3. In such a case, the burden is upon the plaintiff to show some specific negligence on the part of the employer and this burden is not met by showing that two trains approached each other on a single track, and collided, where the evidence clearly showed that the presence of the two trains upon the track was due to an unauthorized message sent by one of the engineers, and that no one but the foreman had authority to give any such order and that he had not only not given it but was not aware that it had been given by any one else; and that even if the message had been authorized, the engineer had not obeyed it in the proper manner.

4. In such a case the plaintiff's action in placing himself in a needlessly dangerous position showed that he was guilty of gross negligence and the trial judge should have so declared as a matter of law.

Argued May 12, 1913. Appeal, No. 212, Jan. T., 1912, by defendant, from judgment of C. P. Northumberland Co., Sept. T., 1908, No. 576, on verdict for plaintiff in case of James Dugan v. The Susquehanna Coal Company. Before FELL, C. J., BROWN, MESTREZAT, POTTER and ELKIN, JJ. Reversed.

Trespass to recover damages for personal injuries. Before AUTEN, J.

The opinion of the Supreme Court states the facts.

Verdict for plaintiff for $1,800, and judgment thereon. Defendant appealed.

*Errors assigned,* among others, were in refusing to direct a verdict for defendant, and to enter judgment for defendant non obstante veredicto.

*W. H. M. Oram,* for appellant.

*George B. Reimensnyder,* with him *T. N. Burke,* for appellee.

OPINION BY MR. JUSTICE POTTER, June 27, 1913:

In this action the plaintiff who was employed as a repairman by the defendant company, sought to recover damages for injuries resulting from the alleged negligence of the defendant. The latter owns and operates a coal mine in Mt. Carmel Township, Northumberland County. The mouth of the mine is some four and a half miles from the breaker with which it is connected by a single track railroad with two turnouts. It appears from the evidence that for some years prior to October 16, 1907, defendant had provided empty cars to convey its miners and workmen from the breaker to the mine in the morning, and to bring them back at night. The duty of hauling these cars was assigned to the engineers of engines Nos. 3 and 11, which at all times had the right of way over the railroad, and no other engine had the right to use that track unless by special orders from the outside foreman. In spite of notice and orders to the contrary, the miners in going down frequently rode upon loaded coal cars. This practice was dangerous and contrary to the provisions of the mining law, and in an effort to prevent it the defendant posted a sign in large white letters on a black ground, in a conspicuous place on the front of the fan house facing the mouth of the slope, warning the men not to ride on loaded cars. The sign was in place at the time of the accident, and had been so for a long time. Notwithstanding the notice and remonstrances on the part of the foreman, some of the men persisted in boarding and riding upon the loaded coal cars. On the day of the accident, October 16, 1907, an engineer named Shaeffer in charge of engine No. 2, had been ordered by the outside foreman Charles Singley to haul timber on a small railroad near the breaker, known as the timber track. This was his usual place of work, and he had no right to take his engine elsewhere without special orders from the outside foreman. But upon the day in question, as is stated in the history of the case, without orders and

without the knowledge of the outside foreman, Shaeffer left the timber track with his engine and ran it up the plane to the mouth of the slope, where he coupled it to a train of four cars loaded with coal. In the meantime engine No. 11, which was used to haul the accommodation train containing the empty cars, to carry the men to and from their work, had in some way become disabled. The engineer of No. 11 had seen Shaeffer with his engine going towards the mine. He did not notify the mine foreman, but without knowledge of the latter, sent a brakeman to the clerks in the office near the breaker to request them to telephone to Shaeffer to bring the men down. The message was telephoned by a clerk to a man employed at the slope, and he in turn communicated it to Shaeffer. The latter did not, however, attach to his engine the empty cars intended for the conveyance of the men, but after a delay of something like half an hour, started down the track with the four loaded cars only, attached to his engine. A number of men mounted the loaded cars, among them the plaintiff James Dugan, who sat on the coal at the front end of the car next to the engine, with his legs hanging over the edge. Meanwhile the outside foreman who had learned that engine No. 11 had broken down and was disabled, ordered the engineer of No. 3 to take his engine to the mouth of the slope, and bring down the cars and the men. In pursuance of this order, the engineer of No. 3 started up the track towards the mine, and in passing around a curve collided with Shaeffer's engine and train, which was coming down. Shaeffer was killed, and plaintiff's leg was caught between the bumper of the engine and the car, and crushed. For the injuries thus sustained the plaintiff sought to recover. Defendant denied negligence on its part and contended that the order which was given by the clerk to Shaeffer to bring down the men was not authorized by anyone having the right to give such an order. It further contended that plaintiff was guilty of contributory negli-

gence in riding on the loaded coal car, and in occupying a dangerous position thereon. The trial judge refused binding instructions for defendant, and submitted the questions of negligence and contributory negligence to the jury, who found a verdict in favor of plaintiff for $1,800. A motion for judgment for defendant non obstante veredicto was overruled, and judgment was entered. Defendant has appealed.

In the cases of O'Donnell v. A. V. R. R. Co., 59 Pa. 239; McNulty v. P. R. R. Co., 182 Pa. 479, and Goehring v. Traction Co., 222 Pa. 600, it was held that where the employee was transported to and from his place of work, as part of the compensation for his services, he was to be regarded as a passenger and entitled to the benefit of the presumptions which arise in such a case. But the distinction between those cases and the one now under consideration is that here it did not appear that there was any contract to transport plaintiff as part of the compensation for his services. The furnishing of transportation to the workmen was, in so far as the evidence disclosed, gratuitous on the part of the defendant company. The plaintiff is therefore to be regarded merely as an employee with the privilege as part of his business, of riding to and from his work in the empty cars provided for that purpose. He therefore is within the rule that mere proof of the fact of the accident is not sufficient to warrant a recovery. Some specific negligence on the part of the employer must be shown. In Higgins v. Fanning, 195 Pa. 599, the rule is thus stated, as appears in the syllabus: "As between employer and employee the mere happening of an accident from which negligence could be inferred raises no presumption of negligence against the employer. A specific act of negligence must be shown." In Spees v. Boggs, 198 Pa. 112, the present Chief Justice said (p. 116): "Except in the case of a carrier, the rule is uniform that where recovery is sought on the ground of negligence of the defendant, the burden of proof is on the plaintiff, and in an action

against an employer some specific act of negligence must be shown."

In the present case the negligence alleged was in permitting the two trains to be run under conflicting orders, towards each other upon a single track. But the evidence clearly shows that the presence of the two trains upon the same track was due to the unauthorized message sent by the engineer of engine No. 11 to the engineer of engine No. 2, asking him to bring down the men. No one but the outside foreman had authority to give any such order, and he had not only not given it, but was not aware that it had been given by anyone else. Whatever negligence there was in the giving of this order was therefore not that of the foreman or of any superior officers of the defendant.

As a matter of fact the engineer of No. 2 did not attempt to take the men down in the empty cars. He took only loaded coal cars on which the men had no right to ride. It is therefore apparent that even if the telephone message had been authorized, the engineer did not obey it in the proper manner. If he had taken the empty cars instead of the loaded ones, and if the miners had boarded these empty cars, in so far as the evidence shows, the accident would not have happened. But aside from this, we see no escape from the conclusion that the misfortune suffered by the plaintiff was due to his own carelessness. "In most cases the question of contributory negligence is one of fact for the jury, though by no means always. Where the facts are clearly established, and the inference of negligence from them manifest, the court should peremptorily so instruct the jury:" Coolbroth v. P. R. R. Co., 209 Pa. 433 (439). From the undisputed testimony it appears that the plaintiff climbed upon a loaded coal car, and placed himself in a dangerous position at the front end of the car with his legs over the edge. He was neither ordered nor invited to ride on this car. He was there in violation of the law of the State and the rule of the

defendant company. Furthermore, he testified to repeated violations of the rule. Such conduct is expressly forbidden by the Anthracite Coal Act of June 2, 1891, P. L. 176, Art. XII, rule 16, which provides: "No person shall ride upon or against any loaded car, cage or gunboat in any shaft, slope or plane in or about a mine or colliery." It also appears from the evidence, as noted above in giving the history of the case, that on the day of the accident and for some time previous thereto, the defendant company had displayed in a conspicuous position opposite the entrance to the mine, a painted sign reading "No Riding on Loaded Cars." The action of the plaintiff, which ignored the law and was in defiance of the explicit rule of the company, cannot be regarded as being anything else than negligence, which, as it contributed to his injury, bars the way to a recovery of damages. Furthermore, the plaintiff placed himself in a needlessly dangerous position when he got upon the loaded car. He sat at the front end facing the back of the engine, with his legs hanging down between the engine and the end of the first car. This was of course a place of special danger, and it is apparent that any man of common sense must have known that it was a perilous place in which to sit. When the accident happened, other men seated further back upon the car, were uninjured. He would no doubt have escaped harm had he not placed himself in this position of special danger. Plaintiff's injury was directly due to this negligence, for his leg was crushed by being caught under the bumper of the engine. There is no conflict in the testimony as to the manner in which the accident occurred. It is shown beyond doubt that the plaintiff was guilty of gross negligence, and the trial judge should have so instructed the jury.

The assignments of error are sustained, and the judgment is reversed.